Donald PLUMMER, Plaintiff–Appellant,

v.

SPRINGFIELD TERMINAL RAILWAY
COMPANY, Defendant–Appellee.

No. 93–1125.

United States Court of Appeals,
First Circuit.

Heard June 8, 1993.

Decided Sept. 23, 1993.

Jeremy R. Feedore, with whom McClung, Peters and Simon, Albany, NY, was on brief, for plaintiff-appellant.

Glen L. Porter, with whom Eaton, Peabody, Bradford & Veague, P.A., Bangor, ME, was on brief, for defendant-appellee.

Before TORRUELLA and SELYA, Circuit Judges, and WOODLOCK,* District Judge.

TORRUELLA, Circuit Judge.

Appellant Donald Plummer sued appellee Springfield Terminal Railway Company ("Springfield") under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60 (1986), for injuries sustained as a Springfield employee. In Plummer's complaint, he requested $650,000 in damages. After a four day trial, the jury found Springfield 12% at fault for the injuries and Plummer 88% at fault.

At first, the jury failed to answer the interrogatory that asked the amount of damages awarded. After two bench conferences, the court sent the jury back to make the determination. The relevant interrogatory asked the jury to determine the amount that would "fairly and adequately compensate the plaintiff Donald Plummer for his injuries." Under that question, the verdict form also stated, "[i]n determining the total amount of damages, do not make any reduction because of the negligence, if any, of the plaintiff." Soon after, the jury returned with a figure of $78,000. Because $78,000 is exactly 12% of $650,000, Plummer's counsel requested that the court ask the jury if the figure was reduced for Plummer's own negligence. The court denied the request, discharged the jury and, after reducing the $78,000 figure by 88%, ultimately entered a judgment of $9,860 for appellant.

Plummer contends that when his attorney asked the jury foreperson later in the day after the jury had been discharged whether the $78,000 figure represented an amount

* Of the District of Massachusetts, sitting by designation.

already reduced for Plummer's negligence, the juror conceded that it had. Plummer also contends that he immediately informed the court of this conversation and requested a voir dire of the jury to determine their true intention,[1] but that the court refused to reconvene the jury.

Several days later, Plummer formally moved to alter the judgment. The district court denied the motion, *see Plummer v. Springfield Terminal Ry. Co.*, No. 91–0114–B (D. Maine Jan. 20, 1993), and Plummer appealed. We affirm.

## DISCUSSION

■ Plummer's principal argument is that the court should have either conducted a voir dire of the jury, or permitted Plummer to obtain affidavits from the jurors in order to determine whether the damage award was reduced to account for his negligence.

Under Federal Rule of Evidence 606(b), when questioned about the validity of a verdict, a juror may not testify about the jury's deliberations or the juror's mental processes during deliberation with two exceptions: a juror may testify to (1) the deliberations with respect to outside influence; and (2) "extraneous prejudicial information."[2] The advisory committee notes for Rule 606(b) explain that "[t]he values sought to be promoted by excluding the evidence include freedom of deliberation, stability and finality of verdicts, and protection of jurors against annoyance and embarrassment." Similarly, we have observed that "the unbridled interviewing of jurors could easily lead to their harassment, to the exploitation of their thought processes, and to diminished confidence in jury verdicts, as well as to unbalanced trial results depending unduly on the relative resources of the parties." *United States v. Kepreos*, 759 F.2d 961, 967 (1st Cir.), *cert. denied*, 474 U.S. 901,

106 S.Ct. 227, 88 L.Ed.2d 227 (1985). At the same time, of course, courts must avoid "simply putting verdicts beyond effective reach [, which] can only promote irregularity and injustice." Fed.R.Evid. 606(b) advisory committee note.

■ A number of circuits hold, and we agree, that juror testimony regarding an alleged clerical error, such as announcing a verdict different than that agreed upon, does not challenge the validity of the verdict or the deliberation or mental processes, and therefore is not subject to Rule 606(b). *See, e.g., Karl v. Burlington Northern Ry. Co.*, 880 F.2d 68, 73–74 (8th Cir.1989); *Eastridge Development Co. v. Halpert Associates*, 853 F.2d 772, 783 (10th Cir.1988); *see also Robles v. Exxon Corp.*, 862 F.2d 1201, 1207–08 (5th Cir.1989), *cert. denied*, 490 U.S. 1051, 109 S.Ct. 1967, 104 L.Ed.2d 434 (1989).

In the present case, Plummer similarly argues that the rendered verdict was not the one agreed upon by the jury, and therefore that his requested inquiry does not invoke Rule 606(b).

Several circuits might find this argument acceptable. In *Eastridge Development Co.*, for example, the jury, contrary to the court's instructions, reduced its verdict by the percentage of the plaintiff's own negligence. The district court interrogated the jury, accepted affidavits from the jury as to their damages calculation, and amended the ultimate award to reflect the jury's decision. The Tenth Circuit accepted the district court's rationale that the jury made a clerical error, and that the inquiry therefore did not violate Rule 606(b). *See also Attridge v. Cencorp Div. of Dover Tech. Int'l, Inc.*, 836 F.2d 113, 116–17 (2d Cir.1987).

By contrast, the Eighth Circuit in *Karl*, 880 F.2d at 73–74, reversed similar actions

---

1. The record contains no indication of this request.

2. Rule 606(b) provides:
   Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or

indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

by a district court judge when the jury made the same mistake. The court in that case found that the inquiry was improper because it went to the thought processes underlying the verdict, rather than the verdict's accuracy in capturing what the jurors had agreed upon.

■ We agree with the district court that *Karl*'s approach better reflects the goals of Rule 606(b) and our opinion in *Kepreos* because it better insulates jury deliberations. In the present case, the verdict form, which the judge went over with the jury,[3] instructed the jury not to reduce the damages verdict based on Plummer's negligence, and Plummer never objected to these instructions.[4] Plummer's current allegations, however, suggest that the jurors believed that the rendered verdict would have a different effect on the parties, based on their understanding of the court's instructions.[5] *Karl*, 880 F.2d at 73–74; *see also Robles*, 862 F.2d at 1207–08. Plummer does not contend that the jurors never agreed upon the rendered verdict—the number that the jury chose is not in dispute. Accordingly, the requested inquiry went to what the jurors were thinking when they chose the number that they did and whether their thinking was sound.[6] *See Karl*, 880 F.2d at 73–74; *Robles*, 862 F.2d at 1205; Fed.R.Evid. 606(b), advisory committee note ("testimony or affidavits of jurors have been held incompetent to show ... misinterpretations of instructions) (citing *Farmers Co-op. Elev. Ass'n v. Strand*, 382 F.2d 224, 230 (8th Cir.), *cert. denied*, 389 U.S. 1014, 88 S.Ct. 589, 19 L.Ed.2d 659 (1967)); *but see Attridge*, 836 F.2d at 117 (characterizing similar inquiry as "ascertaining what the jury decided and not why they did so").

■ Plummer asked the district court to examine the jurors after the jury had already been discharged. This was too late.[7] We

---

3. Specifically, the judge stated the following with respect to the relevant interrogatory:

> And then finally, if you have reached this, what amount of money would fairly and adequately compensate the plaintiff should—plaintiff Donald Plummer for his injuries. That's the full amount, irregardless of what your answer to number five is.
>
> Determine the total amount of damages. Do not make any reductions. If you have answered three, four, and five, you do not change this figure at all.

4. At oral argument, Plummer stated that his appellate brief implicitly assigns error to the instructions on that issue. We can find no such argument in his brief. Although Plummer's brief states that he appeals from his motion to alter the district court's judgment which complained that the court failed to instruct the jury on the disputed issue, the brief does not mention a failure to instruct. Nor does the brief request a new trial on the issue of damages. Thus, we need not address the issue. *See Ryan v. Royal Ins. Co. of America*, 916 F.2d 731, 734 (1st Cir.1990) ("issues adverted to on appeal in a perfunctory manner, unaccompanied by some developed argumentation, are deemed to have been abandoned"). Moreover, even if Plummer's brief had made this argument, our review of instructions and verdict forms that were not challenged before jury deliberation is only for plain error. *Phav v. Trueblood, Inc.*, 915 F.2d 764, 769 (1st Cir.1990). Although the instructions might not have been ideally formulated, they were given to the jury on the verdict form, and we observe no plain error.

5. We construe the instruction on the verdict form as part of the court's instructions to the jury.

6. We are unpersuaded by Plummer's argument that permitting him to obtain affidavits from the jurors would have alleviated the *Kepreos* and Rule 606(b) concerns. Like testimony, juror affidavits would diminish the stability of jury verdicts and the jury's freedom to deliberate, and could just as easily lead to harassment. Additionally, through affidavits, as through testimony, "the 'secret thought of one juror' would have 'the power to disturb the express conclusions of twelve.'" *Karl*, 880 F.2d at 74 (quoting *Mattox v. United States*, 146 U.S. 140, 148, 13 S.Ct. 50, 52, 36 L.Ed. 917 (1892)). Of course, Plummer's counsel is ill positioned to argue that his proposed procedure would alleviate the *Kepreos* concerns. Plummer's counsel already had spoken to at least one of the jurors *ex parte*. In *Kepreos*, 759 F.2d at 967, this court set out a clear rule forbidding "post verdict interview of jurors by counsel." By discussing the verdict with the jury foreperson, Plummer's attorney violated this rule.

7. We note that on the two occasions the jury returned with a verdict before it was discharged, Plummer's counsel successively intimated and requested that the court should inquire of the jurors regarding whether they were reducing the damage figure to reflect Plummer's own negligence. At oral argument, Plummer characterized his pre-discharge efforts in this regard alternatively as requests for inquiries or requests for supplemental jury instructions, depending on the question he faced from the panel. Because Plummer did not develop his vague assertions at oral argument, we consider the issue of the pre-discharge efforts at jury inquiry only as it is explicated in his brief. *See Ryan*, 916 F.2d at

cannot conclude that the district court erred in refusing further inquiry.

█ Finally, Plummer argues, in the alternative, that the district court should have stricken the jury's finding that he was 88% at fault because it was excessive and contrary to the weight of the evidence. However, Plummer failed to provide a transcript of the evidence offered at trial on the liability issue.

█ Under Federal Rule of Appellate Procedure 10(b),

> [i]f the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion.

*See also Syncom Capital Corp. v. Wade,* 924 F.2d 167 (9th Cir.1991). Accordingly, "[w]here an appellant raises issues that are factually dependent yet fails to provide a transcript of the pertinent proceedings in the district court, this circuit has repeatedly held that we will not review the allegations." *Muñiz Ramírez v. Puerto Rico Fire Services,* 757 F.2d 1357, 1358 (1st Cir.1985); *see also Farrar v. Cain,* 756 F.2d 1148 (5th Cir.1985). Because Plummer failed to provide a transcript of the relevant evidence, we do not reach the merits of his argument.[8]

█ Similarly, Plummer's assertion that the court erred in instructing the jury on contributory negligence in light of the lack of evidence on the issue also must fail. Without a transcript of the evidence presented on the liability issue, we cannot determine whether evidence of Plummer's negligence existed.

*Affirmed.*

---

734. And his brief fails to argue that the court erred in disregarding them.

Plummer's brief frames the issue he is presenting to us as the court's refusal "to conduct a voir dire of the jury panel to clarify their verdict in light of the patently mistaken amount recorded...." Yet, however characterized, neither of Plummer's pre-discharge efforts at inquiry sought a voir dire to clarify the recorded amount in the verdict. Plummer's counsel's first intimation of concern, when the jury returned with an incomplete verdict slip, did not seek clarification in light of a recorded amount. When the concern ripened into a specific request after the jury returned on the second occasion with the $78,-000 figure, the court properly described the request, without objection by Plummer, as seeking a "further written question to the jury." Such an interrogatory would not constitute a voir dire. More fundamentally, Plummer mentions in his brief only the later effort at pre-discharge inquiry

and then simply as an explanation for why he did not request a poll of the jury.

While we recognize that the trial court is under an obligation "with appropriate instructions, [to] afford[] the jury a timely opportunity to straighten out both apparent and possible mistakes," *Poduska v. Ward,* 895 F.2d 854, 857 (1st Cir.1990), we can find no sufficient argument that the district court abused its discretion in meeting that obligation with respect to the pre-discharge efforts at inquiry made by plaintiff here.

8. Although we have considered claims when feasible without the transcript of the relevant proceedings, *Valedón Martínez v. Hospital Presbiteriano,* 806 F.2d 1128, 1135 (1st Cir.1986), we can find no fair or meaningful method to review this evidentiary issue without a transcript of the evidence presented. Of course, the transcript of the trial's closing statements provided by Plummer cannot be considered evidence.